### ATLANTA BRICK CO. v. O'NEAL.
### No. 49.

District Court, E. D. Texas, Texarkana Division.

Feb. 19, 1942.

40

Carney & Carney, of Atlanta, Tex., for plaintiff.

E. F. McFaddin and Steve Carrigan, both of Hope, Ark., for defendant.

DAWKINS, District Judge.

Plaintiff, R. S. Allday, alleges that he owns and operates a brick manufacturing plant at Atlanta, Texas, under the name of Atlanta Brick Company, and that defendant operates a similar plant at Hope, Arkansas; that each sells his products in both intrastate and interstate commerce in a trade territory embracing northeast

Texas, southwest Arkansas, and southeast Oklahoma. The suit is for damages, and charges the violation of several Federal statutes, construction of which is alleged as the basis of jurisdiction of this court. The statutes are the Sherman Anti-Trust Act of July 2nd, 1890, as amended by the Miller-Tydings Act, 15 U.S.C.A. §§ 1–7, 15 note; the Clayton Act of October 15, 1914, 38 Stat. 730; the Federal Trade Commission Act of September 26th, 1914, as amended by the Lea-Wheeler Act of 1938, 15 U.S.C.A. § 41 et seq.; and the Robinson-Patman Act of June 19, 1936, 15 U.S. C.A. §§ 13, 13a, 13b, 21a.

Specifically, it is alleged that in December, 1940, plaintiff was the successful bidder for furnishing brick on a housing project at Texarkana, Arkansas, but that defendant caused its brick to be rejected by falsely representing to the architect of the building that plaintiff's brick would absorb an excessive amount of water, thus damaging him in the sum of $5,000; (2) That similar false representations by the defendant caused plaintiff's brick to be rejected on a National Guard Armory project at Prescott, Arkansas, with damages of $1,000; (3) That his brick were rejected for the same reason on a W. P. A. job at Magnolia, Arkansas, resulting in damages of $2,000; and (4) Similar results on a N. Y. A. building at Rison, Arkansas, which damaged plaintiff in the sum of $500.

Plaintiff further alleged that defendant has published and circulated widely false and misleading statements that the brick manufactured by plaintiff were unfit for use by reason of their water absorption, specifically stating that the brick would absorb water "like a sponge" thereby causing great damage to plaintiff's business and that "competition has been materially injured in the trade territory" in which plaintiff operates; that defendant has discriminated between purchasers of the same grade and quality of brick "transported in interstate commerce" which has lessened competition and tended to create "a monopoly" in violation of the Robinson-Patman Act; that defendant has thus sought to force plaintiff out of business; that defendant has gone to many places where plaintiff has sold brick and "picked out unfair samples and had same tested to show that the brick did not meet with Federal specifications"; that defendant has "entered into a conspiracy in restraint of trade and has set up a monopoly in the trade area" in question; that the conspiracy was with two other large dealers in the same territory, likewise engaged in interstate commerce "to control the sale of brick" by "pro-rating orders received by the three among themselves regardless of price, and thereby to hold up the price at one place and at other places to get the price so ruinously low as to stifle all competition and thereby to give to the three concerns a monopoly" in the territory and to force complainant to sell his plant at a great sacrifice; and that defendant " has made and offered rebates to prevent plaintiff from procuring a contract".

Article 12 of the petition is as follows: "Plaintiff further alleges that by reason of the premises, he has been damaged in the sum of $50,000.00 actual damages, and has been compelled to employ attorneys to bring this suit, and has agreed to pay said attorneys a reasonable fee for their services herein; that a reasonable fee would be the sum of $10,000.00."

The prayer is "for his damages trebled in the sum of $150,000" and "for his attorneys' fees in the sum of $10,000."

Defendant has filed (1) a motion to dismiss; (2) a motion to strike Articles 4, 5, 6 and 7 of the complaint; and (3) a motion for a bill of particulars.

1. The motion to dismiss charges that the bill does not state facts upon which relief can be granted and that none of the statutes relied on have any application.

Taking these statutes up in the order enumerated above, the Sherman Anti-Trust Act of July 2, 1890, as amended by the Miller-Tydings Act, makes unlawful "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or [interstate] commerce". 15 U.S.C.A. § 1. Section 7 of the Act as thus amended gives to "any person who shall be injured in his business or property" by anything "forbidden in the antitrust laws" the right to sue therefor "in any district court of the United States" in the District in which defendant resides or is found, without respect to the amount in controversy, and provides that he shall recover "three-fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fees". The petition in this case charges that the defendant with two other brick manufacturers (names not given) combined to control the brick mar-

ket in those portions of the three states above named, by fixing one price where there is no competition and in those sections where competition exists, reducing the price so low that others can not compete, thereby creating a monopoly of the brick business in interstate commerce in the section referred to for the benefit of those dealers. No specific instances or amounts are alleged, but this is more properly to be considered under the motion for a bill of particulars. That fact alone would not justify dismissal of the bill. The facts alleged in these four specific instances do not purport to connect the other two alleged conspirators therewith, and such damages as are alleged are not shown to have been caused by any violation of the Anti-Trust statute. Such acts are the result of some "contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce". Contracts, combinations and conspiracies require the participation of more than one person; whereas the acts alleged with respect to these four transactions are simply those of the defendant, and amount to no more than a common law tort. Therefore, the only allegations to which the Anti-Trust laws can apply are to be found in the general charges of conspiracy and combination between the three brick manufacturers, two of whom are not named, found in Article 10 of the petition. With respect to this charge, the allegations do amount to more than a legal conclusion in that the method used to stifle competition and to force plaintiff to sell his business was by "pro-rating orders received" among themselves "regardless of price and thereby to hold up the price in one place and at other places to get the price so ruinously low as to stifle all competition." Of course, if a combination resulted in holding the price up above the market, it is hard to see how this could injure the plaintiff who does not buy but sells his products. The damage would be to the purchasers or consumers, unless the combination or conspiracy went to the extent of having two or more of the dealers join in the fraudulent representations with respect to plaintiff's brick, which would keep them out of the market. On the other hand, if the combination was to keep the price down to where plaintiff could not sell at a profit until he was driven out of business, it would cause him a damage for which under proper allegations and proof he might have relief. However, these allegations are too general. No facts are alleged as to the instances or transactions in which the prices were forced down or the amount of damages suffered by plaintiff as a result thereof, nor does the petition name the other parties to the conspiracy.

■ The portion of the Clayton Act relied upon here is Section 4, 15 U.S.C.A. § 15, which like the Sherman Act, gives to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" the right to "sue therefor in any district court of the United States" where the defendant resides or is found, regardless of amount involved and provides that he "shall recover threefold the damages," etc. The Anti-Trust laws referred to are declared in the first Section, 15 U.S.C.A. § 12, to be Act of July 2, 1890 (the Sherman Act), Act of August 27th, 1894, 28 Stat. 570, 15 U.S.C.A. §§ 8–11, 15 note, entitled "An Act To reduce taxation, to provide revenue for the Government, and for other purposes", and the amendment of the last mentioned Act, approved February 12, 1913, 37 Stat. 667. Therefore, nothing in the Clayton Act in my opinion enlarges the remedies of the plaintiff in the present case over what they are under the Sherman Act.

■ Section 5 of the Federal Trade Commission Act, as amended by the Lea-Wheeler Act of 1938, 15 U.S.C.A. § 45, declares that "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful". This was evidently for the purpose of strengthening the power of the Trade Commission, which was therein created to enforce its provisions, but the Act nowhere gives any additional right of action to persons injured by unfair trade practices. On the contrary, it expressly provides that nothing therein shall "be construed to alter, modify, or repeal the said antitrust Acts." 15 U.S.C.A. § 51. (Meaning the Sherman Act, Clayton Act, etc., discussed above.)

The Robinson-Patman Act amended Section 2(a), 15 U.S.C.A. § 13(a), of "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes" approved October 15, 1914, and made it unlawful to "discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in [interstate] commerce * * * and where the effect of such dis-

crimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them". Subsection (c) of said Section makes it unlawful for anyone engaged in interstate commerce in the course of such commerce to buy or grant or to receive and accept any commissions, brokerage, etc. in the sale of merchandise, and Subsection (f) makes it unlawful "to induce or receive a discrimination in price which is prohibited by this section."

Section 3 of said Robinson-Patman Act, 15 U.S.C.A. § 13a, also makes it unlawful for anyone "to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge [which] is granted to the purchaser over and above any discount, rebate," etc. is not available to all competitors, or to contract to sell goods at prices lower than those exacted elsewhere for the purpose of destroying competition or eliminating a competitor, or to sell or contract to sell goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor. It does not provide in express terms that persons injured by things forbidden shall have a cause of action but by declaring them unlawful, the person so injured, I think, is entitled to invoke its provisions, if he can allege and prove injury proximately caused by such violations. To this extent, it would seem that the claim for relief under the Robinson-Patman Act should stand, but the plaintiff should amend his complaint by alleging facts to show specifically such injuries.

2. As to the motion to strike Articles 4, 5, 6 and 7, what has been said above, I think, demonstrates that the allegations of these articles, if proven, may sustain recovery at common law, but not under the Anti-Trust laws. They should therefore remain in the petition. It is well to state, however, that the prayer is not for judgment upon these items either in the principal sums or three times those amounts, but for a lump sum under the general allegations of Article 12. Items in Articles 4, 5, 6 and 7 can not be considered or included for trebling damages because they were not caused by violations of Anti-Trust laws.

For the reasons heretofore stated in this opinion, I think the motion for a bill of particulars should be granted, the names of the other two dealers who are alleged to have conspired with defendant in violation of the Anti-Trust laws should be given, and the petition should set forth the concrete facts as to time, place, circumstances and things done which constituted such violations, itemizing amounts claimed in each instance.