**L'AIGLON APPAREL, Inc.**

v.

**LANA LOBELL, Inc.**

Civ. A. No. 15273.

United States District Court
E. D. Pennsylvania.

Nov. 10, 1953.

Earl G. Harrison, Bernard G. Segal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff.

Edmonds, Obermayer & Rebmann, Philadelphia, Pa., Markowitz, Liverant & Boyle, York, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is a motion to dismiss, on the ground that the complaint fails to state a cause of action or, in the alternative, because of improper venue or, again in the alternative, to transfer the action to the Middle District of Pennsylvania. The jurisdiction of the federal court to entertain the action is also challenged.

The plaintiff and the defendant sell women's dresses in competition, the plaintiff, a manufacturer, to department and other stores and the defendant through mail orders direct to the ultimate consumer. One type of dress sold by the plaintiff is of distinctive style, originated by it and widely advertised. The retail price is $17.95. The defendant sells a dress for $6.95 copied from the plaintiff's design and very much, but not exactly, like it.

There is no suggestion of any attempt on the part of the defendant to palm its dress off on the public as having been manufactured by the plaintiff or to appropriate the plaintiff's goodwill by infringement of trade-mark or trade name or in any other way. The plaintiff concedes, as it must, that the defendant has a perfect right to copy the dress and there is no question that it has the right to sell copies, of cheaper materials and inferior workmanship.

The plaintiff bases its case of unfair competition upon the fact that the defendant, in advertising its own dress, published in a magazine a photograph of one of the plaintiff's dresses, whereas the dress which the defendant delivers to its customers is not a dress designed like the dress of the photograph but a different one. To my inexpert eye, the difference is very slight, but the complaint alleges that it differs in several essential particulars and I am willing to accept that as a fact for the purposes of this motion. As is to be expected, in view of the difference in price, the defendant's dress is distinctively inferior to the plaintiff's. Actually, the cause of action pleaded boils down to the fact that the defendant does not copy an article which it is free to copy after telling the public that it is doing so.

The gist of the action is stated as follows: "By falsely representing in its advertisement that its $6.95 dress is identical to plaintiff's $17.95 dress, defendant has deliberately, wantonly, maliciously and fraudulently caused consumers to believe that the dress sold through plaintiff's retailers for $17.95 can be purchased from defendant for $6.95. As a result consumers who have purchased plaintiff's dress are dissatisfied; others who might have purchased plaintiff's dress have been and are persuaded to buy defendant's dress; and others, who may not have purchased defendant's dress, are deterred in any event from purchasing plaintiff's dress. As a further result, plaintiff's sales to its retail customers have been drastically curtailed."

I am of the opinion that the complaint must be dismissed, first, because it fails to state a cause of action upon which relief can be granted and, second, because federal jurisdiction is lacking.

The entire cause of action is predicated upon the deception implied in the use of the photograph, namely, that a mail order customer ordering from the defendant will get a dress for $6.95 which will look exactly like the one which the plaintiff sells for $17.95. If the defendant had copied the plaintiff's dress in every detail there would have been no deception (there being no allegation of any misleading representations by the defendant as to material or workmanship), and nothing upon which the plaintiff could have built a case. The plaintiff does not claim that the defendant's use of a picture of the plaintiff's dress is a false representation of its quality or that the defendant's customers are led to believe that they will get as good a dress as the plaintiff's but merely one that looks like it, cheaper.

Incidentally, if it makes any difference, it does not appear from the complaint that the differences between the two dresses accounts for the entire difference in price or that the defendant could not have copied the plaintiff's dress exactly and still sold it at a substantially lower price.

It seems to me that the decision of the Supreme Court in Mosler Safe Co. v. Ely-Norris Safe Co., 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578, is directly in point. In that case the decision of the district court dismissing a bill in equity to enjoin unfair competition was upheld by the Supreme Court. The bill alleged that the plaintiff sold a safe containing an explosion chamber and that the defendant made and sold safes with a metal band around the door at substantially the same location as the explosion chamber of the plaintiff's safe, which amounted to a representation to the public that the band was employed to cover or enclose an explosion chamber, by which the public was led to purchase the defendant's safes as and for safes containing an explosion chamber such as the plaintiff manufactured. It was also alleged that sometimes the defendant's safes had no explosion chamber under the band but were bought by those who wanted explosion chambers and so the defendant deprived the plaintiff of sales, competed with the plaintiff unfairly and damaged the plaintiff's reputation.

In effect, the defendants were falsely representing that their article had a functional feature which it did not have. The plaintiff's safe with the explosion chamber was patented, but the false representation complained of was only in connection with safes which did not infringe its patent, and which anyone was free to make.

In the present case, the plaintiff's dress can be and always could have been freely copied by any manufacturer and it is consistent with every allegation in the complaint in this case that there are other dresses like the plaintiff's being made and sold. The defendant is charged only with representing that its dresses would look like the plaintiff's which, so far as appears, it has a perfect right to do if the representation is true. If on the other hand the representation is false as it is alleged to have been, there is nothing but the bare allegation to show that customers, had they known the facts, would have gone to the plaintiff rather than to other competitors in the market, or to lay a foundation for the claim of loss of sales.

It will be noted that the foregoing paragraph is practically a paraphrase of the last paragraph of Justice Holmes' opinion in the Mosler Safe case, supra. The Court ruled that no cause of action had been pleaded and the decision governs this case.

■ Jurisdiction on the basis of diversity is absent. Therefore, a federal court would have no jurisdiction of the present case unless it is conferred by some statute of the United States. The plaintiff points to the Lanham Trade-Mark Act, 15 U.S.C.A. § 1051 et seq., and the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., as conferring such jurisdiction.

■ In American Automobile Association v. Spiegel, 205 F.2d 771, the Court of Appeals for the Second Circuit, in an opinion by Judge Learned Hand, ruled squarely that the Lanham Act did not confer such jurisdiction and I fully subscribe to the reasoning and the ruling in that case. There is undoubtedly language in the Lanham Act which, if taken out of context, could be read as a grant of jurisdiction. However, the portions of that Act principally relied on by the plaintiff are Section 1126, Title 15 U.S.C.A. Subsections (b), (h) and (i). The express and primary intent of Section 1126 was to implement certain treaties between the United States and foreign nations, which assured foreign nationals of trade-mark protection in the United States. It is doubtful whether the guarantee in the treaties of the repression of unfair com-

254

petition was intended to be broader than the protection of trade-marks or trade names, or at least that that was the understanding of Congress when the Lanham Act was enacted. However that may be, I do not think that Subsection (i) which gives to citizens of the United States "the same benefits as are granted by this section" to foreign nationals could have been intended to effect the revolutionary expansion of federal jurisdiction for which the plaintiff contends. The subject matter of Section 1126 is competition between foreign nationals and American citizens and it is doubtful whether Subsection (i) was intended to do more than give citizens involved in such competition and controversies arising out of it the same rights that foreign nationals would have under the prior provisions of the section. It seems to me almost inconceivable that the sweeping extension of federal jurisdiction which the plaintiff's construction calls for would be introduced into the law without clear and unmistakable language and without mention of it in the committee reports. It is more than unlikely that it was intended to come in by the back door, as it were, by means of a sort of addendum to a statute conferring certain rights upon aliens.

If there were doubt about this proposition, it seems to me it would be resolved by provisions of Section 1338(b), Title 28 U.S.C., passed two years after the Lanham Act which provides that the District Courts shall have jurisdiction of "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws." This was the law, as it stood before the passage of the Lanham Act, and the intention of Congress appears plain that the law should be the same after the passage of the Act as before.

 I am satisfied that the Federal Trade Commission Act does not confer jurisdiction.

The complaint may be dismissed.