**Gladys G. HOLLOWAY et al., Plaintiffs,**

v.

**BRISTOL–MYERS CORPORATION,**
**Defendant.**

**Civ. A. No. 2194–70.**

United States District Court,
District of Columbia.

April 15, 1971.

William A. Dobrovir, Bruce J. Terris, Washington, D. C., for plaintiffs.

Gilbert H. Weil, New York City, William G. Greif, Washington, D. C., for defendant.

## OPINION

WILLIAM B. JONES, District Judge.

Plaintiffs brought this action for a declaratory judgment, injunctive relief, compensatory and punitive damages. They allege that defendant's advertisement of its product Excedrin has been and is false as a result of which they, and all other persons similarly situated, have been injured and are continuing to be injured.

The false advertising plaintiffs assert is defendant's statements that Excedrin is more than twice as effective an analgesic as aspirin and that this has been demonstrated by a study of pain among patients in a hospital. According to plaintiffs these statements have been and are being published in newspapers and magazines, displayed in buses and broadcast by radio and television stations in the District of Columbia and throughout the nation.

Plaintiff Holloway alleges that she was induced in 1970 by such advertising to purchase six bottles of Excedrin. She sues on her own behalf and on behalf of all other persons who similarly relied on defendant's advertisements.

Plaintiff Adams reads newspapers and magazines; listens to radio broadcasts and views television. She also rides buses. She reads, listens to and views defendant's advertisements of Excedrin. She asserts that she does not wish to be subjected to false, misleading and deceptive advertising. She sues on her own behalf and on behalf of all other newspaper and magazine readers, radio listeners and television viewers who do not want to be subjected to false, misleading and deceptive advertisements.

Plaintiff Consumer Association of the District of Columbia (Association) is composed of 200 consumer members, most of them housewives. It alleges that members have been induced by defendant's advertising to purchase Excedrin and may in the future be induced to buy that product.

Plaintiff Federation of Homemakers, a District of Columbia corporation (Federation) is a nationwide non-profit corporation. It has 5,000 members in 46 states who are consumers. It alleges that its members by defendant's advertising have been induced to buy Excedrin and may in the future be induced to make further purchases.

Plaintiffs Association and Federation claim to represent the class consisting of all consumers and purchasers of analgesics who are being and will be deceived and misled by defendant's advertising of Excedrin if its dissemination is not restrained.

Plaintiffs base their right to relief (1) on a statutory cause of action under sections 5, 12 and 14 of the Federal Trade Commission Act, 15 U.S.C. §§ 45, 52, 54, (2) an equitable cause of action for fraud and nuisance, and (3) a common law cause of action for deceit. Defendant has moved to dismiss the complaint for lack of jurisdiction and for failure to state any cause of action.

■ 1. *Statutory cause of action.* Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) declares unlawful "unfair or deceptive acts or practices in commerce."[1] Section 12 of the Act (15 U.S.C. § 52) declares it to be unlawful for a corporation to disseminate, or cause to be disseminated, any false advertisment in commerce by any means for the purpose of inducing, or which is likely to induce, the purchase of drugs. Such advertising "shall be an unfair or deceptive act or practice in commerce"

within the meaning of section 5 of the Act (15 U.S.C. § 45).[2] Section 14 of the Act (15 U.S.C. § 54) makes a violation of section 12 (15 U.S.C. § 52) a misdemeanor punishable by fine or imprisonment, or both, if the false advertising was with the intent to defraud or mislead.[3]

Plaintiffs argue that those sections of the Act have as their purpose the protection of the consumers of the country. Since, as they assert, they are consumers who have been injured because of defendant's false advertising they come within the class Congress sought to protect. Therefore, they reason, they have a right to bring this action under the Act to rectify the wrongs that have been worked upon them.

The difficulty in accepting plaintiffs' argument is found in the authorities which hold that the Federal Trade Commission Act creates no private right of action. In 1926, the Supreme Court in Moore v. N. Y. Cotton Exchange, 270 U. S. 593, 603, 46 S.Ct. 367, 368, 70 L.Ed. 750, asserted that relief in cases asserting unfair methods of competition under section 5 of the Act (15 U.S.C. § 45) "must be afforded in the first instance by the commission."

Since that decision other courts have held that no private action may be maintained because of acts declared unlawful by section 5. LaSalle Street Press, Inc. v. McCormick and Henderson, Inc., 293 F.Supp. 1004, 1006 (N.D.Ill.1968); Carlson et al. v. Coca-Cola Co. and Glendinning Companies, Inc., 318 F.Supp. 785,

---

1. Section 5 (15 U.S.C. § 45) states:
 (a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

2. Section 12 (15 U.S.C. § 52) states:
 (b) The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of section 45 of this title. Sept. 26, 1914, c. 311, § 12, as added Mar. 21, 1938, c. 49, § 4, 52 Stat. 114.

3. Section 14 (15 U.S.C. § 54) states:
 (a) Any person, partnership, or corporation who violates any provision of section 52(a) of this title shall, if the use of the commodity advertised may be injurious to health because of results from such use under the conditions prescribed in the advertisement thereof or under such conditions as are customary or usual, or if such violation is with intent to defraud or mislead, be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not more than $5,000 or by imprisonment for not more than six months, or by both such fine and imprisonment; * * *

N.D.Cal.1970; Marquette Cement Mfg. Co. v. Federal Trade Commission, 147 F.2d 589, 594 (7 Cir. 1945). Samson Crane Co. v. Union Nat. Sales, Inc., et al., 87 F.Supp. 218, 221 (D.Mass.1949), while dealing only with section 5 of the Act, cited Moore v. N. Y. Cotton Exchange, 270 U.S. 593, 603, 46 S.Ct. 367, as authority for the proposition that private litigants have no right of action to enforce the Act against any of the acts and practices declared unlawful by the Act.

As recently as 1965, the Supreme Court, in an unfair competition action, held that this Commission "in the first instance [is] to determine whether a method of competition *or the act or practice complained of is unfair.*" Atlantic Refining Co. v. Federal Trade Commission, 381 U.S. 357, 367, 85 S.Ct. 1498, 1505, 14 L. Ed.2d 443. (Emphasis supplied.)

There is no merit to plaintiffs' argument that because the cited cases did not deal with "deceptive acts or practices" by false advertising, they are not applicable authorities. Such "unfair practices" as well as "unfair methods of competition" are both declared unlawful by section 5 of the Act (15 U.S.C. § 45). And section 12 (15 U.S.C. § 52) declares "deceptive act or practice" by false advertising to be within the meaning of section 5.

In 1938 the Federal Trade Commission Act was amended by the Wheeler-Lea Act. (52 Stat. 111.) However, there is nothing in the legislative history of those amendments to suggest that Congress even considered providing a private right of action to enforce the Act. Instead there is ample in the legislative history to indicate that the focus of Congress' concern was to strengthen the Commission's power to control advertisements affecting the public health. In speaking of the provision on advertising (now § 12 of the Act), the House sponsor of the bill, Congressman Lea,

stated that "[t]he main purpose of this is to strengthen the jurisdiction that the Federal Trade Commission already has over advertising." 83 Cong.Rec. p. 392 (January 12, 1938). In trying to clarify his amendment to the bill, Congressman Wolverton said that " * * * the only substantial difference of opinion within the committee arises with regard to the penalties provided, the method of enforcement and by what agency of the Government." 83 Cong.Rec. 396 (January 12, 1938). Thus the obvious emphasis in the legislative history is on strengthening the powers of the Government, principally through the Federal Trade Commission, to deal with unfair trade practices such as false advertising. However, plaintiffs argue that the broadening of section 5 to prohibit unfair trade practices, whether or not they affect competition, and the enactment of section 12 without express Congressional exclusion in either instance of a private right of action to enforce them so strongly implies such a right that the Supreme Court's decision in Moore v. N. Y. Cotton Exchange, *supra,* prohibiting such a right of action is limited to original section 5 situations. They make that argument relying solely on the rationale that the 1938 amendments were designed to protect the consumer more directly than were the provisions of the original act, which had focused on preventing unfair trade practices injurious to competition. Such an argument is unpersuasive. Atlanta Brick Co. v. O'Neal, 44 F.Supp. 39, 42 (E.D.Texas 1942).

Moreover, Congress currently recognizes that no private right of action was meant to exist under the Act. There were several bills before the 91st Congress which would have created such a right of action under the Act by providing that consumers who have been damaged by unfair or deceptive trade practices may bring class actions to seek relief under the standards of the Act.[4] The

---

4. H.R. 14585, 91st Cong., 1st Sess. §§ 2 and 4 (1969); S. 3092, 91st Cong., 1st Sess. §§ 2 and 4 (1969); H.R. 14931, 91st Cong., 1st Sess. § 204 (1969); S.

3201, 91st Cong., 1st Sess. § 204 (1969). The latter two bills differ from the former by proposing to allow a consumer to bring a private class action under the Act only

necessity for such a legislative change is quite clear to the sponsor of one bill in the House, Congressman Robert C. Eckhardt: "Under present law the Federal Trade Commission Act provides only for the processing of cases against persons engaged in unfair or deceptive practices by the Commission itself." [5]

Notwithstanding the authorities against them, plaintiffs contend that by the doctrine of implication they can bring this action under the Federal Trade Commission Act. That doctrine states that a "federal statute passed to protect a class of citizens, although not specifically authorizing members of the protected class to institute suit, nevertheless implie[s] a private right of action." Allen v. State Board of Elections, 393 U.S. 544, 557, 89 S.Ct. 817, 827, 22 L.Ed.2d 1 (1969). While courts have implied rights of action for a variety of reasons, none of them are applicable to plaintiffs' situations. For instance, in one line of cases the courts have been faced with the choice of either allowing a private right of action by implication from a statute or forcing the people for whose protection the statute was enacted to rely upon the threat of criminal prosecutions brought by the Government in order to deter the forbidden conduct.[6] In an analogous situation a court, caught between cutting off all federal funds for a state employment program and permitting the state agency to ignore federal

regulations for the benefit of the laborers employed under the program, granted the laborers an action against the state agency to enforce the regulations.[7] In still other situations, courts have recognized that an agency lacks the power to grant adequate retrospective civil relief and have allowed a private right of action to seek such relief.[8] None of these cases implying private rights of action are relevant to the facts before this Court. In none of them could the plaintiffs seek relief before an agency which had the power to grant the relief they sought as necessary to ensure the protection intended by the relevant statutes.

Plaintiffs have cited two lines of cases allowing a private right of action which are relevant to the issues before this Court. In both J. S. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) and Allen v. State Board of Elections, 393 U.S. 544, 557, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) and their respective progeny, even though a private right of action was allowed, the government agency or official responsible for insuring compliance with the statutory standards had been given the authority to seek the exact relief requested by the private parties.[9]

In the *Borak* case, the Court was concerned that the Securities and Exchange Commission must examine over 2,000 proxy statements annually and that given the plethora of facts in each statement,

---

after the Commission and the Attorney General have proceeded to a final cease and desist order.

5. Eckhardt, Consumer Class Actions, 45 Notre Dame Lawyer 663, 669 (1970).

6. Texas & Pacific Ry. v. Rigsby, 241 U.S. 33, 39–40, 36 S.Ct. 482, 60 L.Ed. 874 (1916); Wyandotte Transportation Co. et al. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967) (implying an additional action for money damages for the Government); Reitmeister v. Reitmeister, 162 F.2d 691 (2nd Cir. 1947).

7. Gomez v. Florida State Employment Service, 417 F.2d 569, 576 (5th Cir. 1969).

8. Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2d Cir. 1956) (Civ-

il Aeronautics Board lacks such power); Mortimer v. Delta Air Lines, 302 F.Supp. 276 (N.D.Ill.1969) (private right of action as to damages only—injunctive relief must be sought in the first instances through CAB); Wills v. Trans World Airlines, 200 F.Supp. 360 (S.D.Cal.1961).

9. The *Allen* case is distinguishable as dealing with a problem of a different magnitude. In allowing a private party and not just the Attorney General to enforce the Voting Rights Act of 1965, the Court took notice of the Attorney General's limited staff and the multitudes of state and local elections of all kinds. Faced with this problem of policing, the Attorney General had been able to bring only one action in three years. 393 U.S. at 556, n. 22, 89 S.Ct. 817.

only by implying a private right of action could there be a truly effective check on misleading statements. The Court was buttressed in its conclusion by the Act's broad grant of jurisdiction to federal courts in "all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder." [10]

There is no corresponding provision in the Federal Trade Commission Act. Rather, the only reference to court proceedings are those in which review of Commission orders may be had or in which section 12 may be enforced by a civil suit which specifically may be brought by the Federal Trade Commission or by a criminal proceeding which may be brought by the Attorney General.

Plaintiffs argue at some length that the Federal Trade Commission has not over a period of several years taken any effective action against defendant and its allegedly false, misleading and deceptive advertising of its product Excedrin. Whatever merit there may be to plaintiffs' complaint this Court has no jurisdiction over a private action brought under the Federal Trade Commission Act.[11]

2. *Common law cause of action.* Not only do plaintiffs claim that they have a right of action under the Federal Trade Commission Act but they also assert that they have a cause of action at common law. Among the relief sought is damages to every consumer deceived by defendant's Excedrin advertisement in the amount of the difference between the price paid by the consumer for Excedrin and the price charged for aspirin.

■ The only plaintiff who claims that she bought, through deception, Excedrin, is plaintiff Holloway. She asserts that she purchased six fifty tablet bottles in 1970. She does not allege what she paid for each bottle or what a bottle of aspirin cost. However, analgesics and the cost thereof are matters of such common knowledge to all persons that this Court is free to declare six bottles of Excedrin did not cost plaintiff Holloway $10,000.00, regardless of what the difference would have been if she purchased six bottles of aspirin. This Court does not have jurisdiction of an action for damages as claimed here where the amount in controversy does not exceed $10,000.00. Sec. 11–521, D.C.Code (1967), 28 U.S.C. § 1331. Nor is jurisdiction to be obtained by aggregating the claims of all other persons of the class whom plaintiff Holloway would represent. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Nor does this Court have jurisdiction of the punitive damage claims. Sankin v. 5410 Connecticut Avenue Corp., 281 F.Supp. 524, (D.D.C.1968), aff'd. sub. nom. Benn v. Sankin, 133 U.S.App.D.C. 361, 410 F.2d 1060 (1969), cert. denied 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970).

■ Plaintiffs also contend that this Court has jurisdiction over the monetary damage claims as ancillary to its equitable jurisdiction under section 11–521 D. C.Code (1967). At the time this action was filed section 11–961 D.C.Code (1967) conferred exclusive jurisdiction on the District of Columbia Court of General Sessions in actions in which the damages claimed did not exceed the sum of $10,-000.00, exclusive of interest and costs, except as to counterclaims, cross claims, or any other claims "interposed" in actions over which this Court has jurisdiction.[12] But that exception did not provide ancillary jurisdiction as to damage actions connected with equitable claims over which this Court might have jurisdiction. Garney Miller, et al. v. Retail

10. Section 27 of the Securities Exchange Act of 1934, 48 Stat. 902–903, 15 U.S.C. § 78aa (1964).

11. The Federal Trade Commission is not a party to this action.

12. This action was commenced while the Court of General Sessions existed. As of February 1, 1971, that court became The Superior Court of the District of Columbia with enlarged jurisdiction not applicable here. Act of Congress of July 29, 1970, 84 Stat. 473.

Adjustment Board, (Civil Action No. 900–69, Oct. 8, 1969, Gesell, J.)..

█ Plaintiffs Holloway, Federation and Association also seek for themselves and the classes they represent to enjoin defendant from further disseminating its alleged false and deceitful advertising of Excedrin. Assuming that, even without the jurisdictional amount of more than $10,000.00, this Court has equitable jurisdiction (Garney Miller et al. v. Retail Adjustment Board, *supra*), this would not be a proper case in which to exercise that jurisdiction.

Even if plaintiff Holloway has alleged all of the elements of equitable fraud and common law deceit, she is not entitled to any prospective, equitable relief because she is aware of the true nature of the defendant's product, as she alleges it to be, and is not susceptible to injury due to the defendant's advertisement.[13] The class she would represent are presumably as informed as she is of the alleged false advertising. Plaintiff Holloway has failed to state a claim upon which relief can be granted.

Plaintiffs Federation and Association, who seek equitable relief, would avoid plaintiff Holloway's problem by requesting that relief for all those members of the public who are buying or who will buy Excedrin relying upon defendant's alleged misrepresentations but who are not aware of the alleged fact of misrepresentation. They allege that their own members have been and may in the future be induced by the Excedrin advertisement to purchase that product.

█ It is clear that an organization has standing to seek equitable relief on behalf of its own members.[14] But here the claims of the plaintiff-organizations on behalf of their members are specious for the same or nearly the same reasons

as plaintiff Holloway's claims in behalf of all persons similarly situated to her. Either the members actually know of the alleged misrepresentation in defendant's advertisement or they could easily be informed by their organizations. Even in the event that some of the 200 members of the Consumer Association of the District of Columbia or some of the 5,000 members of the Federation of Homemakers are unaware of the allegedly misleading nature of the advertisement for Excedrin, that does not constitute a claim for which relief should or can be granted. It is within the powers and it would appear within the duty of the organizations to make known to the members what they allege to be the true qualities of the product. This Court with its already heavy docket would not be justified in engaging in protracted proceedings which could, at the most, only lead to that result. Courts have traditionally exercised their powers of equity with discretion and this Court will follow that tradition.

█ These organizations also seek the same equitable relief on behalf of all those members of the public who are unaware of the alleged misrepresentations in the defendant's advertisement and who may buy Excedrin in the future relying upon that advertisement. This raises the question whether an organization has standing to seek equitable relief in a class action on behalf of the public as consumers where the organization does not present a claim for which relief can be granted to itself or its own members. The Supreme Court has clearly stated that a person cannot represent a class of which he is not a part. Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Here plaintiff organizations and their members do not present a claim for which relief could be

---

13. *See* Prosser on Torts, 522–26 (2nd ed. 1955). In his discussions of the history of the action for deceit and the relief granted by equity from frauds Prosser does not suggest prospective relief as a remedy.

14. National Student Association v. Hershey, 134 U.S.App.D.C. 56, 73–74, 412 F.2d 1103, 1119–1121 (1969); Citizens Ass'n. of Georgetown v. Simonson, 131 U.S.App.D.C. 152, 403 F.2d 175 (1968); MacArthur Liquors, Inc. v. Palisades Citizens Ass'n., Inc., 105 U.S.App.D.C. 180, 265 F.2d 372 (1959).

granted to themselves and hence are not in the same class as the general public. Therefore this Court can see no reason to depart from the general rule as to class actions enunciated by the Supreme Court in Bailey v. Patterson.

The final plaintiff, Aileen Adams, alleges that she is a reader of newspapers and magazines, a radio listener, a television viewer and a bus rider and that in these capacities, she has been subjected to false, misleading and deceptive advertisements for Excedrin. She asserts that the continuing dissemination of the advertisement constitutes continuing torts of private and public nuisance and that she is entitled to injunctive relief both for herself and all others similarly situated whom she seeks to represent in a class action. She does not claim that she or the class she would represent were ever induced by such advertising to buy Excedrin.

 As to plaintiff Adams' claim for relief under a tort of public nuisance, a private individual may maintain an action for a public nuisance only if she suffers special damage, distinct from that common to the public. Alexander v. Wilkes Barre Anthracite Coal Co., 254 Pa. 1, 98 A. 794 (1916); Prosser, Torts, 401 (2d ed. 1955). Plaintiff Adams has made no such allegation on behalf of herself or any member of the class. As to her claim for relief under a tort of private nuisance, that action may be maintained only by those whose property rights have been invaded. Stokes v. Pennsylvania R. Co., 214 Pa. 415, 63 A. 1028 (1906); Prosser, Torts, 405. No such claim has been made here. Moreover, this Court has considered such factors as the probable extent of the plaintiffs' discomfort, the lack of physical damage to any property, the plaintiffs' ability to avoid some of the discomfort, and the nature of the interferences with property rights for which the law has traditionally granted relief and finds the plaintiffs' novel theory of a tort nuisance of advertising to be insubstantial.

Accordingly, this Court will grant defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted.