Dorothy CARLSON et al., Appellants,

v.

The COCA–COLA COMPANY, a Delaware corporation, and Glendenning Companies, Inc., a Connecticut corporation, Appellees.

No. 26842.

United States Court of Appeals,
Ninth Circuit.

July 31, 1973.

As Amended Aug. 20, 1973.

John E. Hill (argued), Melvin M. Belli, Robert L. Lieff of Belli, Ashe, Ellison, Choulos & Lieff, San Francisco, Cal., for appellants.

John N. Hauser (argued), Charles F. Preuss (argued), James L. Hunt, Robert L. Maines of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for appellees.

## OPINION

Before ELY and HUFSTEDLER, Circuit Judges, and SOLOMON, District Judge.*

ELY, Circuit Judge:

Acting individually and, purportedly as class representatives, appellants initiated this action against The Coca-Cola Company for damages. The complaint alleged that Coca-Cola had engaged in a nationwide promotional game, Big Name Bingo, that was deceptively structured to deprive many participants of prize money to which they were allegedly entitled under the rules of the game. Under Federal Rule of Civil Procedure 12, the District Court, 318 F.Supp. 785, dismissed the complaint for failing to establish a requisite basis for federal jurisdiction. We affirm.

Appellants sought to ground general federal jurisdiction upon 28 U.S.C. § 1337, which provides:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The specific Act of Congress under which this action was alleged to have arisen is section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1):

"Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."

Here, the pivotal question is thus whether private litigants may invoke the jurisdiction of federal district courts solely by alleging that defendants engaged in business practices proscribed by section 5(a)(1). Whether the District Court had jurisdiction depends upon whether this action was one "arising under" section 5(a)(1).

"Arising under", in the context of 28 U.S.C. § 1337,[1] requires a plaintiff seeking jurisdiction to state a claim arising under a federal act regulating commerce. To acquire federal jurisdiction, a plaintiff must assert a colorable right to a remedy under a particular federal statute. The statutory provision invoked by the appellants in this case provided them with no direct remedy, either explicitly or implicitly. This conclusion is supported by solid authority of long standing. *See* Amalgamated Workers v. Edison Co., 309 U.S. 261, 268, 60 S.Ct. 561, 84 L.Ed. 738 (1940) (dictum); Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); Holloway v. Bristol-Myers Corp., 485 F.2d 986 (D.C.Cir. 1973); United States v. St. Regis Paper Co., 355 F.2d 688, 693 (2d Cir. 1966) (dictum); New Jersey Wood Finishing Co. v. Minnesota Mining & Manufacturing Co., 332 F.2d 346, 352 (3d Cir. 1964) (dictum), aff'd, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965); Holloway v. Bristol-Myers Corp., 327 F.Supp. 17 (D.D.C. 1971); La Salle Street Press, Inc. v. McCormick & Henderson, Inc., 293 F.Supp. 1004 (N.D.Ill.1968); Smith-Victor Corp. v. Sylvania Electric Products, Inc., 242 F.Supp. 302 (N.D.Ill. 1965); L'Aiglon Apparel, Inc. v. Lana Labell, Inc., 118 F.Supp. 251 (E.D.Pa. 1953); Samson Crane Co. v. Union National Sales, Inc., 87 F.Supp. 218, 221 (D.Mass.1949), aff'd, 180 F.2d 896 (1st Cir. 1950); National Fruit Product Co. v. Dwinell-Wright Co., 47 F.Supp. 499 (D.Mass.1942); Atlanta Brick Co. v. O'Neal, 44 F.Supp. 39 (E.D.Tex.1942). The protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission. *See id.*

---

* The Honorable Gus J. Solomon, Senior United States District Judge, Portland, Oregon, sitting by designation.

1. Judicial interpretations of "arising under" are equally applicable to 28 U.S.C. § 1331 and 28 U.S.C. § 1337. *See* Russo v. Kirby, 453 F.2d 548, 551 n.2 (2d Cir. 1971).

Section 5(a)(1) equips the Federal Trade Commission with a flexible tool with which to combat unfair trade practices. *See e. g.,* New Jersey Wood Finishing Co. v. Minnesota Mining & Manufacturing Co., *supra* at 352. Consumers cannot transmute that tool into a crowbar for prying open door 1337 to the federal courthouse.

Affirmed.

SOLOMON, Senior District Judge (dissenting):

The Coca-Cola Company conducted a national sales-promotion contest, Big Name Bingo, in which each contestant received a game card with ten questions. The answers were printed on the inside of soft drink cartons and bottle caps. Coca-Cola promised each winner $100. The Official Rules said that one answer might be correct for more than one question and that for some of the questions none of the answers provided were correct. The Rules did not mention that any question had or required more than one correct answer.

Appellants submitted entries with one correct answer to each question. At the end of the contest, Coca-Cola announced that some questions required more than one correct answer and Coca-Cola refused to pay appellants the $100 prizes. Appellants allege that about 1,500,000 people entered the contest and that almost all of them gave one, and only one, correct answer to each question.

Appellants filed this class action under 28 U.S.C. § 1337 against Coca-Cola and Glendenning Companies, Inc., its advertising agency. Appellants assert that Big Name Bingo was unfair and deceptive and that respondents violated Section 5 of the Federal Trade Act, 15 U.S.C. § 45(a)(1) [the Trade Act].

The District Court dismissed appellants' action for lack of jurisdiction for their failure to state a claim because Section 5 does not create a private right of action.

Appellants do not seek to expand the coverage of Section 5. The sole issue here is whether aggrieved parties can redress violations of this section even though it does not include an express private right of action. Numerous cases permit a private right of action in similar situations. *See* J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) [Securities and Exchange Act of 1934]; Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944) [Railway Labor Act]; Texas & Pacific Ry. v. Rigsby, 241 U.S. 33, 36 S. Ct. 482, 60 L.Ed. 874 (1916) [Safety Appliance Act]; Burke v. Compania Mexicana De Aviacion S.A., 433 F.2d 1031 (9th Cir. 1970) [Railway Labor Act]; Reitmeister v. Reitmeister, 162 F.2d 691 (2d Cir. 1947) [Federal Communications Act]; Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (S.D.Cal. 1961) [Civil Aeronautics Act].

In J. I. Case v. Borak, *supra,* the Supreme Court allowed an aggrieved investor to recover damages resulting from a false proxy statement that violated Section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a) [the Securities Act]. The Securities Act authorizes the Securities and Exchange Commission (SEC) to enforce Section 14(a), but it does not expressly provide a private right of action for an investor. Because the SEC has been unable to enforce Section 14(a) effectively, the Supreme Court found that private actions are necessary "to make effective the congressional purpose [of protecting investors]." 377 U.S. at 433, 84 S.Ct. at 1560.

Section 5 of the Trade Act is intended to protect the public from "unfair or deceptive acts or practices in commerce." The Trade Act expressly grants authority to the Federal Trade Commission (the FTC) to enforce Section 5, but it does not mention private actions by aggrieved consumers.

The FTC has been ineffective in its role as a consumer protection agency. The prohibitions against unfair and deceptive trade practices have been flaunted since their enactment in 1938. Re-

port of the American Bar Association Commission on the Federal Trade Commission, Sept. 15, 1959. The sole enforcement weapon available to the FTC to police most consumer frauds is the cease-and-desist order, which has proved inadequate.

> "A cease-and-desist order is not enough to create the kind of deterrent that one needs so that . . . business will police itself, because *no agency, State or Federal, can police violations of the law. What you depend on is for the community to police itself.* But in order for a community to police itself, you have to have effective sanctions . . . ." S.Rep. No.91–1124, 91st Cong., 2d Sess. 4–5 (emphasis added).

Critics have also complained that the FTC is undermanned and that it has befriended business at the expense of the consumer. *See* Report of the American Bar Association Commission on the Federal Trade. Commission, *supra.* Historically, the SEC has been more aggressive and effective than the FTC in pursuing its congressional mandate. Nevertheless, the Court in J. I. Case v. Borak, *supra,* found persuasive the practical limitations resulting from a limited SEC staff which was confronted with the task of examining 2,000 proxy statements a year. A private right of action was implied because the SEC could not, within its personnel limitations, protect investors against the fraud from which Congress intended to protect them.

The FTC's ability to protect consumers is even more severely circumscribed. In 1972, the FTC received 9,000 "applications for a complaint" each month.[1] At that time there were only 27 attorneys in the Commission's Division of Food and Drug Advertising. With this disparity between need and resources, only a few consumer complaints could be considered and even fewer complaints issued. In fiscal 1971, the Commission's Division of Food and Drug Advertising issued only twelve complaints under Section 5 of the Trade Act. Four of these cases were contested and eight were settled by consent decrees.

I do not believe the protection of Section 5 can be a reality without private actions, such as appellants', brought under 28 U.S.C. § 1337 without regard to jurisdictional amount.

Coca-Cola contends that J. I. Case v. Borak, *supra,* is not applicable here because the Trade Act does not have a jurisdictional provision like the one in the Securities Act, which gives the district courts jurisdiction over all actions "brought to enforce any liability or duty" created by the Act. 15 U.S.C. § 78aa. The *Borak* decision does not rest on that provision. The Supreme Court interpreted *Borak* to mean that a private party can maintain an action if his interest falls "within the class that [a] statute [is] intended to protect, and [if] the harm that occurred [is] of the type that the statute [is] intended to forestall." Wyandotte Trans. Co. v. United States, 389 U.S. 191, 202, 88 S.Ct. 379, 386, 19 L.Ed.2d 407 (1967).

The majority assert that Section 5 does not provide the consumer with either an explicit or implicit direct remedy and that "[t]his conclusion is supported by solid authority of long standing."

I disagree. Claimants, as consumers, together with competitors are aggrieved parties and are entitled to the benefits and protection of the Trade Act. Nothing in that Act gives the FTC either primary or exclusive jurisdiction. Most of the authorities upon which the majority rely are either admittedly dicta or are unfair competition cases. Many cite Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), as controlling authority. *Moore* held that relief in cases of unfair competition "must be afforded in the first in-

---

1. *See* Statement by FTC Chairman Miles W. Kirkpatrick before Senate Agriculture, Environmental, and Consumer Protection Subcommitte of the Senate Committee on Appropriations (92nd Congress, 1st Sess., part 3, Page 2642).

stance by the commission." *Id.* at 603, 46 S.Ct. at 368.[2]

In my view, *Moore* is not controlling because the Supreme Court decided *Moore* before the 1938 Wheeler-Lea Act Amendments expanded Section 5 to protect consumers. Furthermore, the Court in *Moore* did not consider whether a private right of action should be implied where administrative remedies are insufficient to afford the protection intended by Congress when enacting Section 5. *See* Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285, 291 (1963).

The majority's restrictive interpretation leaves consumers, especially the poor, with little protection against dishonest merchants and manufacturers.

"[Consumers are left with] nowhere to turn for effective redress. Generally quite small amounts are involved as far as any one [consumer fraud] is concerned. The cost of private counsel is generally more than the amount involved . . . . [T]he consumer's frustration turns to a feeling of hopelessness and a feeling that the law does not serve him fairly.

. . . . . .

"Crime is crime whether it be at the tip of a gun or the tip of a pen and the tip of a tongue of a fraudulent sales operator. All reasonable forces for years have decried consumer fraud. It is long past time we turned orations into actions, lament into law, exhortation into fraud elimination." S.Rep., *supra*, at 3.

I believe that Section 5 allows private actions. Appellants' claims are based on the established principle that a party has a cause of action when damaged by conduct that violates a statute enacted for his protection. Restatement of Torts, 2d § 286.[3] I find no reason to deviate from that principle here.

I would reverse.

---

2. Only three weeks after enacting the original Section 5, Congress explicitly created a private right of action to redress many of the kinds of unfair competition prohibited by Section 5. See 15 U.S.C. § 15 (Section 4 of the Clayton Act).

3. "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in 1 Com.Dig., *tit.* Action upon Statute (F), in these words: 'So, in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law.' (Per Holt, C. J., Anon., 6 Mod. 26, 27.) This is but an application of the maxim, *Ubi jus ibi remedium.*" Texas & Pacific Ry. v. Rigsby, *supra*, 241 U.S. at 39, 40, 36 S.Ct. at 483.