Henry BECKENSTEIN, d/b/a Becken-
stein Brothers and Tolland Enterprises;
Hartford Federal Savings and Loan As-
sociation; Park Avenue Pharmacy In-
corporated; Harvest Hill Package Store,
Inc.; Hy Berson and Isadore Berson,
d/b/a Youth Centre; Essex Motor Inn
Corporation; Standard Educators, Inc.;
ECLC Learning Centers, Inc.; Kelly To-
tonis d/b/a Coronado Club Apartments;
the Theodore D. Bross Line Construc-
tion Corp.; Universal Design, Incorpo-
rated; Seymour D. Sard, Inc.; Town &
Country Liquors, Inc.; Mickey's Drive-
In, Inc.; Robert Drywall Company, Inc.;
the 477 Corporation; Dart's Dairy, Inc.;
Pre-Designed Structures, Inc.; William
Vonachen, d/b/a Ivy Hill Launderette;
Eastern Equipment Sales, Inc.; Bright-
view Convalescent Home, Inc.; Leonard
Berg, d/b/a Berg & Dejohn; the DSD
Company; Kimberly Hall Nursing
Home, Inc.; Friendly Ice Cream Corpo-
ration, Plaintiffs,

v.

The HARTFORD ELECTRIC LIGHT
COMPANY and Northeast
Utilities, Defendants.

Civ. No. H78–222.

United States District Court,
D. Connecticut.

Oct. 26, 1979.

**418**

William R. Moller, Hartford, Conn., for plaintiffs.

Palmer S. McGee, Jr., Day, Berry & Howard, Hartford, Conn., for defendants.

## RULING ON MOTIONS TO DISMISS

CLARIE, Chief Judge.

The defendants have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this complaint for failure to state a claim upon which relief can be granted. The parties have submitted, and the Court has considered, matters outside the pleading in deciding this motion. Therefore, the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R. Civ.P. 56. Drawing every reasonable inference in favor of the plaintiffs (see *Heyman v. Commerce and Industry Insurance Company,* 524 F.2d 1317, 1320 (2d Cir. 1975)), the Court finds that no issue of material fact remains to be resolved. The Court finds further that the plaintiffs have failed to state a claim over which this Court has independent, federal subject matter jurisdiction, upon which relief can be granted, and it declines to exercise pendent jurisdiction over plaintiffs' state law claims. Summary judgment shall therefore enter in favor of the defendants.

### Statement of Facts

The plaintiffs are customers of the defendant Hartford Electric Light Company ("HELCO"), a public service company supplying electricity within the greater Hartford Metropolitan area. The defendant Northeast Utilities is a public utility holding company which owns all of the outstanding shares of HELCO common stock. The plaintiffs have brought this class action seeking monetary and injunctive relief for alleged violations of 15 U.S.C. §§ 1 and 2, commonly known as sections 1 and 2 of the Sherman Act; 15 U.S.C. § 14, commonly known as section 3 of the Clayton Act; 15 U.S.C. § 13, commonly known as the Robinson-Patman Act; 15 U.S.C. §§ 41–51, commonly known as the Federal Trade Commission Act, particularly section 5 thereof; Conn.Gen.Stat. §§ 35–26, 35–27, and 35–29, commonly known as sections 3, 4, and 6 of the Connecticut Anti-Trust Act; and the common law.

In 1972, the plaintiffs were customers of HELCO under a billing classification known

as Rate 30 (All Purpose General Service Electric). Rate 30, which became effective on July 1, 1965, was available to commercial customers qualifying under the following conditions:

"(a) Electricity supplied by the Company shall be the only source of energy for heating the structure through a permanently installed electric heating system, thermostatically controlled, sufficient to meet accepted comfort heating standards and where the electric heating load is at least 25% of the total load.

(b) Electricity supplied by the Company also shall be the only source of energy for lighting, cooling, cooking, water heating and power." *See* Complaint at ¶¶ 18, 19.

In 1972, HELCO applied to the Connecticut Public Utilities Commission ("Commission") for a rate increase in Docket No. 11253. HELCO proposed a substantially equal percentage increase in all rates (including Rate 30) except street lighting. *See* Finding and Order of the Commission, Docket No. 11253 (July 28, 1972) (Defendants' Exhibit 1) pp. 1, 9, 10, 11. In passing upon HELCO's petition for an overall rate increase, however, the Commission found (after a hearing) that offering lower rates for customers who used only electric energy for their heating needs was improperly preferential and directed HELCO to eliminate such rates:

"In this Finding we are directing the elimination of preferential and exclusive rates, which require that the energy supplied be used entirely for the customer's space heating needs.

. . . . .

Rate schedules bearing clauses requiring electricity to be the sole use of energy for space heating shall be amended to eliminate such provisions." Finding and Order of the Commission, Docket No. 11253 (July 28, 1972) pp. 14, 23.

In a supplemental order to Docket No. 11253, the Commission found that the immediate elimination of Rate 30 would cause undue hardship to the customers of that billing classification and therefore directed HELCO to phase out Rate 30 over a two year period.

"It has been determined that the 'exclusive use' clause of Rate No. 30 'All-Purpose General Service Electric' cannot be eliminated at this time since it would result in unduly burdensome increases to such customers at one time by transferring them to other commercial or industrial rates. The company, therefore, has refiled this rate as a closed rate which would not be available to new customers. This rate would reflect the increase authorized by the Commission for one year. At the beginning of the second year the billing under this rate will be one-half the difference between closed Rate # 30 and new Rate # 22. At the beginning of the third year the rate would be phased out completely and the billing henceforth will be on Rate # 22." Supplemental Finding and Order of the Commission, Docket No. 11253 SP (2) (September 29, 1972) (Plaintiffs' Exhibit 1) p. 2.

Pursuant to the Commission's order in Docket No. 11253, HELCO terminated Rate 30 and as of October 20, 1974, the plaintiffs were billed under Rate 22. The plaintiffs consequently incurred higher costs for electricity under Rate 22 then they did under the former Rate 30. By application filed March 31, 1975, Docket No. 11718, the plaintiff Beckenstein Brothers requested that the Commission either restore commercial electric heating Rate 30 or order a rate design that would be substantially similar to the former Rate 30. After a hearing, the Commission denied this application. In denying the application of Beckenstein Brothers, the Commission made the following findings:

"Rate 30, as it existed at the time of construction by Beckenstein Brothers, was an exceptionally reasonable rate designed to offer the *all-electric* customer a somewhat better rate than that available to customers who were *not* all-electric. Rate 30 and other such rates were deemed preferential and exclusive and the Commission, in Docket No. 11253, directed that all such rates be eliminated. This then necessitated the transfer of these customers on such rates to the same

rates as all other customers of the same class.

In the Commission's opinion, such rates are promotional at a time when the use of electric energy should not be promoted and, further, are discriminatory, since the only valid reason for a reduced rate is if the load characteristics are beneficial to the company and, thus, to *all* ratepayers.

Further, the Commission denied a similar objection to the elimination of Rate 30 in Docket No. 11400 (1973). The Commission responded then in its Finding and Order that, '(T)he Commission took this action (elimination of Rate 30) through its previous Docket No. 11253 relating to the Company because it considered that rates based on the exclusive use of electricity were preferential and thus improper.' " Decision and Order of the Commission, Docket No. 11718 (October 28, 1975) (Defendants' Exhibit 4) p. 2.

■ The plaintiffs appealed this decision of the Commission to the Connecticut Court of Common Pleas for Hartford County and the court sustained their appeal on October 12, 1977. On October 14, 1977, the defendants filed a motion to set aside the court's judgment and order a new trial. That motion is currently pending before the state court. Thereafter on May 4, 1978, the plaintiffs filed the present action in federal court.[1]

### Discussion of the Law

I. *Claims Under The Federal Antitrust Laws*

A. *Sherman Act: The "State Action" Defense*

Plaintiffs claim that the conduct of the defendants constitutes "a contract, combination, or conspiracy in restraint of trade in violation of . . . section 1 of the Sherman Act" as well as a "combination or conspiracy to monopolize trade in the energy market . . . in violation of . . section 2 of the Sherman Act." In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court ruled that Congress did not intend the proscriptions of the Sherman Act to apply to certain "state action." In a line of recent decisions, the Supreme Court has attempted to define the contours of this state action defense. *See City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Cantor v. Detroit Edison Company,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). The Supreme Court, however, has failed to provide clear guidelines, and the parameters of the state action doctrine remain murky at best. *See generally* M. Handler, *Antitrust—1978,* 78 Colum.L.Rev. 1363, 1374–88 (1978).

Despite this unsettled state of the law, most lower courts and legal commentators recognize at the core of the state action doctrine a tripartite test for immunity from the provisions of the Sherman Act:

1. The activity must be required, commanded, or affirmatively prohibited by the state. Acquiescence or approval is not sufficient.

2. It must be shown that the state has an independent and articulated regulatory interest in the activity challenged.

---

1. The Court recognizes that the provisions of the Johnson Act, 28 U.S.C. § 1342 severely limit the jurisdiction of federal courts to enjoin the operation of state utility rate orders. The Johnson Act, however, does not divest a federal court of jurisdiction where, as here, jurisdiction is based on an alleged violation of a federal statute and the complaint alleges interference with interstate commerce. The Act provides as follows:

"The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State."

3. The activity must be closely supervised by the regulatory agency.

See, e. g., *Mobilfone v. Commonwealth Telephone Co.*, 571 F.2d 141, 143–44 (3d Cir. 1978); M. Handler, *Changing Trends in Antitrust Doctrines: An Unprecedented Supreme Court Term*, 77 Colum.L.Rev. 980, 1014–16 (1977).

█ Applying this test to the facts at bar, the Court finds that the defendants fall within the protection of the state action doctrine and that therefore the conduct, of which the plaintiffs complain, is not subject to the provisions of the Sherman Act. First, the activity which underlies the plaintiffs' action, i. e., the elimination of Rate 30, was ordered by the Connecticut Public Utilities Commission, an agency of the State. The defendants did not seek, request, or initiate the elimination of Rate 30. The Commission determined in 1972 that Rate 30 was preferential and therefore improper and ordered that it be terminated. The defendants' actions consisted merely of compliance with the Commission's order. The merits of the Commission's 1972 finding and order are not before this Court.

Moving to the second part of this three-part test, the Court observes that the State of Connecticut has a clearly articulated regulatory interest in the rate provisions of its public service companies. When the Commission ordered the elimination of Rate 30, sections 16–1 to 16–50f of the Connecticut General Statutes provided an extensive scheme of administrative regulation and supervision of public service companies operating within the state. The defendant was and is a public service company within the meaning of Conn.Gen.Stat. § 16–1.

Finally, the various decisions of the Commission, submitted as exhibits by the parties, make clear that the Commission has been extremely active in supervising rate-making to assure that rates will be just, reasonable and nondiscriminatory.

B. *The Clayton Act: The Standing Limitation*

█ Section 3 of the Clayton Act, 15 U.S.C. § 14, provides as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The plaintiffs assert that the defendants' alleged exclusionary condition in the former Rate 30 (a reduced rate on condition that plaintiffs-customers not use alternative energy sources) constitutes a violation of section 3 of the Clayton Act. Assuming, *arguendo*, that this conduct of the defendants violated section 3 of the Clayton Act, however, the plaintiffs lack standing to seek either treble damages or injunctive relief for such a violation of the antitrust laws.

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . and shall recover threefold the damages by him sustained . . . ." Despite the broad language of this section, the courts have imposed a standing limitation similar to the tort law doctrine of proximate causation. The Second Circuit has articulated this standing requirement as follows:

"There must be a causal connection between an antitrust violation and an injury sufficient for the trier of fact to establish that the violation was a 'material

cause' of or a 'substantial factor' in the occurrence of damage. And this connection must also link a specific form of illegal act to a plaintiff engaged in the sort of legitimate activities which the prohibition of this type of violation was clearly intended to protect. . . . Consequently, a plaintiff must allege a causative link to his injury which is 'direct' rather than 'incidental' or which indicates that his business or property was in the 'target area' of the defendant's illegal act." *Billy Baxter, Inc. v. Coca-Cola Co.*, 431 F.2d 183, 187 (2d Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971) (citations omitted). "[T]his court has committed itself to the principle that in order to have 'standing' to sue under § 4 of the Clayton Act, a person must be within the 'target area' of the alleged anti-trust conspiracy, i. e., a person against whom the conspiracy was aimed, such as a competitor of the persons sued. . . . In simple terms a 'target' is a person or business against which competitive aim is taken. The line is clearly drawn by requiring that to have standing one must be an object of an antitrust conspiracy." *Calderone Enterprises Corp. v. United States Artists Theatre Circuit, Inc.*, 454 F.2d 1292, 1295–96 n.2 (2d Cir. 1971), *cert. denied*, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972).

In the case at bar, the plaintiffs have alleged no facts which would support a finding that the defendants' alleged exclusionary condition in former Rate 30 was a cause, proximate or otherwise, of their alleged injuries. Indeed, the cause of plaintiffs' alleged injuries was not the existence of former Rate 30—with or without the alleged exclusive dealing element claimed to be the antitrust violation under the Clayton Act—but rather the termination of Rate 30, which termination was ordered by the Commission. The plaintiffs were only benefited, not harmed, by the existence of Rate 30.

The plaintiffs similarly lack standing to seek injunctive relief for the alleged violation of section 3 of the Clayton Act. More-

over, plaintiffs have no grounds for seeking injunctive relief at this time because the alleged violation of the Clayton Act—the exclusive dealing provision of the former Rate 30—has already been remedied pursuant to the Commission's order to eliminate Rate 30.

## C. *The Robinson-Patman Act*

■ In their complaint, plaintiffs allege that defendant HELCO joined with the Commission to eliminate Rate 30, thereby creating "a discrimination in the prices, services and facilities provided to the plaintiffs as the plaintiffs cannot avail themselves of other energy sources such as oil, natural gas, solar heating or wood" in violation of the Robinson-Patman Act. These allegations misconceive the essential nature of illegal price discrimination and fail to state a claim upon which relief can be granted.

The only provision of the Robinson-Patman Act arguably relevant to plaintiffs' claim is section 2(a), 15 U.S.C. § 13(a). In order to state a claim under section 2(a), the plaintiff must allege that the defendant-seller made two or more sales to at least two different purchasers. *See Hiram Walker, Inc. v. A & S Tropical, Inc.*, 407 F.2d 4, 7 (5th Cir.), *cert. denied*, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969); *Massachusetts Brewers Association v. P. Ballantine & Sons Co.*, 129 F.Supp. 736, 739 (D.Mass.1955). The plaintiffs, however, have failed to allege that HELCO sold electricity to another similarly situated purchaser at a price lower than that charged plaintiffs. The relative costs to plaintiffs of electricity provided by HELCO, on the one hand, and of alternative energy sources, on the other, does not provide a basis for a claim under the Robinson-Patman Act.

## II. *Private Right of Action Under the Federal Trade Commission Act*

■ The plaintiffs claim that the defendants' conduct in first offering and then eliminating an "all electric" Rate 30 constituted "unfair and deceptive practices" in violation of 15 U.S.C. §§ 41–51, commonly

known as the Federal Trade Commission Act.

The Second Circuit, however, has recently reaffirmed in explicit terms that courts will not imply a private right of action under the Federal Trade Commission Act. *See Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 561 (2d Cir. 1978) (*citing Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 237 (2d Cir. 1974); *Holloway v. Bristol-Myers Corp.,* 158 U.S.App.D.C. 207, 485 F.2d 986 (D.C. Cir. 1973)).

### III. *Claims Under State Law*

■ The plaintiffs have urged the Court to hear various state law claims under the doctrine of pendent jurisdiction. The Supreme Court of the United States long ago made it clear that "pendent jurisdiction is a doctrine of discretion, not of plaintiff[s'] right." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The Supreme Court also asserted flatly in *Gibbs* that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139.

■ This policy has been reaffirmed more recently by the Second Circuit:

"[T]he retention of jurisdiction for trial of a pendent state law claim on the basis of a federal question claim already disposed of by a Rule 12(b)(6) motion, would be an abuse of discretion absent unusual circumstances . . . suggesting some prejudice arising from relegating the case for trial in the state court." *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir. 1975).

No such "unusual circumstances" are present in the case at bar. Therefore, in order to avoid needless decisions of state law, the Court will not retain jurisdiction of plaintiffs' pendent state law claims.

Summary judgment shall enter for all defendants on the plaintiffs' federal law claims. The plaintiffs' pendent state law claims are dismissed without prejudice.

SO ORDERED.