**Gary FREEDMAN**

v.

**MELDY'S, INC. and Richard Meldofsky.**

**Civ. A. No. 83–5992.**

United States District Court,
E.D. Pennsylvania.

Feb. 28, 1984.

Joseph L. Higgins, Post & Schell, P.C., Philadelphia, Pa., for plaintiff.

Stephen G. Fox, Barry D. Floyd, Bernstein & Fox, P.C., Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VANARTSDALEN, District Judge.

The complaint in this action has its genesis in an exclusive franchise agreement entered into between plaintiff and defendant, Meldy's, Inc. Plaintiff seeks to recover losses sustained in the operation of a franchised restaurant, which enterprise he allegedly entered into as a result of certain misrepresentations made by defendants. Defendants have moved to dismiss the complaint for failure to state a cause of action and lack of subject matter jurisdiction. Defendants' motion to dismiss for failure to state a cause of action will be granted.

### Background

Plaintiff's complaint avers that plaintiff is a citizen of the state of New Jersey, that defendant Richard Meldofsky (Meldofsky) is also a citizen of that state, and that defendant Meldy's, Inc. (Meldy's) is a corporation organized, existing and with its principal place of business in the Commonwealth of Pennsylvania. Plaintiff avers that prior to November 6, 1981 Meldofsky, acting individually and as president of Meldy's, actively recruited plaintiff to become a franchisee of Meldy's. Plaintiff entered into an exclusive franchise agreement with Meldy's on November 6, 1981 whereby plaintiff was granted the exclusive right to operate a restaurant known as Meldy's in the Gallery, a center-city shopping mall in Philadelphia, Pennsylvania.

Plaintiff claims that during the frequent consultations which led to the signing of the franchise agreement Meldofsky made representations "that the franchise restaurant operation would produce between $5,000 and $6,000 of gross sales per week if the volume of trade were low," and "that plaintiff would be guaranteed a salary of $300 per week from the business" (plaintiff's complaint, paragraph 8).

Plaintiff contends that he relied upon these representations (plaintiff's complaint, paragraph 9), but that at no time prior to entering into the franchise agreement was he provided with "written documentation of substantiation of the representations" (plaintiff's complaint, paragraph 10).

In Count I of the complaint plaintiff seeks recovery of the loss sustained when he was forced to invest substantial addi-

tional funds to keep the business afloat and for the loss of the allegedly guaranteed salary. In Count II plaintiff seeks recovery of the franchise fee, the additional invested funds and the guaranteed salary alleging that Meldy's, through its president, Meldofsky, made false non-financial representations to the plaintiff, including the use of the good will of "Meldy's Prime Meats" despite defendant's knowledge that, as a new business, the restaurant possessed no such intangible benefits.

Plaintiff brought suit in this court under 28 U.S.C. § 1331 alleging that defendants violated the "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," 16 C.F.R. §§ 436.1–438.10 (1983), promulgated by the Federal Trade Commission pursuant to the Federal Trade Commission Act (FTCA or Act), 15 U.S.C. §§ 41–58.

### Discussion

On September 26, 1914, Congress passed the Federal Trade Commission Act and established the Federal Trade Commission (FTC). The FTC was created as one of the prongs in a two-pronged effort to improve enforcement of the anti-trust laws.[1] As enacted in 1914 the Act declared unlawful all unfair methods of competition in commerce and it empowered the FTC to prevent the use of unfair methods of competition in commerce. The 1938 Wheeler-Lea Amendments to the Act contained provisions relating to advertising in general and food, drug and cosmetic advertising in particular. Recently, the Act was again amended by the passage of the Federal Trade Commission Improvements Act of 1980, Pub.L. No. 96–252, 94 Stat. 374 (1980).

The courts have almost uniformly rejected the argument that there is an implied right of action under the FTCA. *Dreisbach v. Murphy,* 658 F.2d 720 (9th Cir.1981); *Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 561 (2d Cir.1978);

*Alfred Dunhill Limited v. Interstate Cigar Co., Inc.,* 499 F.2d 232 (2d Cir.1974); *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986 (D.C.Cir.1973); *Carlson v. Coca-Cola Co.,* 483 F.2d 279 (9th Cir.1973); *Beckenstein v. Hartford Electric Light Co.,* 479 F.Supp. 417 (D.Conn.1979); *L'Aiglon Apparel v. Lana Lobell, Inc.,* 118 F.Supp. 251 (E.D.Pa.1953). *But see Guernsey v. Rich Plan of Midwest,* 408 F.Supp. 582 (N.D.Ind. 1976) (recognizing private right of action for consumers under FTCA). One of the most frequently cited cases supporting the denial of a private right of action and the one containing perhaps the most detailed analysis in support of such a position is *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986 (D.C.Cir.1973).

In *Holloway* the District of Columbia Circuit held that there was no implied right of action under the FTCA as enacted in 1914 or under the Wheeler-Lea Amendments.[2] The plaintiffs had brought a class action challenging certain advertising practices of one of the defendant's products as false and misleading. Because the case was decided before *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny, the court used a somewhat different, and arguably more liberal, five criteria standard to decide if there was an implied right of action. The court, however, did state that:

> the core of our decision rejecting implication of a private action lies in our analysis of the ramifications of the asserted private remedy and a comparison of these with the policies and objectives sought to be advanced by Congress. This analysis is conjoined with a further discussion of ... legislative intent and ineffectiveness of the means provided by Congress for effectuating its objective.

*Holloway,* 485 F.2d at 989 (footnote omitted). In declining to find an implied right of action under the Act the court relied in large measure on the fact that such private

---

**1.** The other prong to improve enforcement was the Clayton Act, 15 U.S.C. §§ 12–27.

**2.** Having been decided in 1973, the court had, of course, no occasion to consider the 1980 amendments.

enforcement would substantially interfere with the FTC's enforcement of the Act.

None of the decisions since *Holloway,* which in the main have rejected an implied right of action, has seen fit to reevaluate *Holloway* in light of *Cort* and its progeny. In light of the fact that the Supreme Court's position since *Cort* is considerably more restrictive in implying rights of action under federal statutes, none is probably necessary. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

Given the above described applicable case law and that this circuit has apparently adopted the *Holloway* rationale, *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332, 339 (3d Cir.1975), it would seem elementary that plaintiff's action must be dismissed. There is one problem, however, which must be addressed.

In 1979 the FTC, for the first time, promulgated rules controlling disclosure of information to prospective franchisees. 16 C.F.R. §§ 436.1–438.10 (1983). The rules basically make it an unfair or deceptive act or practice for a franchisor to fail to furnish certain required information. 16 C.F.R. § 436.1 (1983). The difficulty stems from the FTC's Statement of Basis and Purpose which accompanied the rules in the Federal Register:

> The Commission believes that the courts should and will hold that any person injured by a violation of the Rule has a private right of action against the violator under the Federal Trade Commission Act, as amended, and the Rule. The existence of such a right is necessary to protect the members of the class for whose benefits the statute was enacted and the Rule as being promulgated, is consistent with the legislative intent of the Congress in enacting the Federal Trade Commission Act, as amended, and is necessary to the enforcement scheme established by the Congress in that Act and to the Commission's own enforcement efforts.

Since these rules were promulgated after *Holloway* the initial question to be decided is whether *Holloway* is still controlling. If the FTC rules can be said to reflect a change in Congressional intent, I don't think *Holloway* would control. That leads to the crux of the problem: what effect does the FTC's expressed view, that there is a private cause of action under the new regulations, have on prior court decisions as to congressional intent? The question is particularly interesting in light of the following: the *Holloway* holding relied in large part upon the rationale that private enforcement of the Act would upset the FTC's enforcement scheme. The FTC, under the new regulations, opines that enforcement of its new rules will be ineffective without private enforcement. The new rules are analogous to the Securities Exchange Commission Rules on disclosure which have been held to be enforceable by private right of action. Disclosure rules are precisely the type of rules difficult to enforce by agency action alone.

If Congress' intent has not changed I am constrained, under the law of this circuit, to dismiss plaintiff's complaint, regardless of any belief I may have that the *Holloway* rationale may be affected by the FTC's new disclosure rules.

Research has uncovered a case in which this precise issue was addressed. In *Chelson v. Oregonian Publishing Co.,* 1981–1 Trade Cas. (CCH) §§ 64,031, at 76,336–37 (D.Ore. March 4, 1981), the court considered an argument that the new FTC rules with their interpretive guide required the court to defer to the FTC's construction of the Act. The court, rejecting such an argument, held that "[w]hether or not a private right of action exists for any act of Congress is a matter traditionally left to the judiciary." *Id.* at 76,336. The court had already stated that the Ninth Circuit,

along with other courts, has held there is no implied right of action under the FTCA.

I agree that the courts are to decide if Congress intended an implied right of action. However, the *Chelson* court did not discuss whether Congress' intent may have changed with regard to the new rules. Congress' intent could have changed in one of several ways: (1) Congress could have expressly stated a view as to a private right of action under the new rules; (2) Congress could have adopted, either directly or by implication, the FTC's position; (3) the FTC's position could somehow be taken to be that of Congress; or (4) the FTC's position alone is controlling. Absent one of these being present, dismissal of plaintiff's complaint would be mandated under established prior law.

The first possibility can be dismissed rather quickly. Research has uncovered no evidence that Congress has expressly stated that there is to be an implied right of action under the FTC's franchise disclosure rules.

The other possibilities that can be quickly eliminated are that the FTC's view can somehow be equated with that of Congress or that the FTC's position alone is sufficient.

Immediately prior to the FTC's passing of the franchise disclosure rules Congress was considering a conference resolution relating to a bill containing certain amendments to the FTCA. The bill eventually died because of the diametrically opposed views of the House and Senate as to a provision for Congressional veto. The House wanted the power to veto FTC regulations independent of the Senate (a one-House veto). The Senate on the other hand voted overwhelmingly in favor of no veto power. The conference committee proposed a two-house veto as a compromise which was eventually rejected by the House. *See generally* H.R. 3816, 95th Cong.2d Sess. 124 Cong.Rec. H 32323–35 (daily ed. Sept. 28, 1978). During the debate of a conference resolution relating to the bill there was substantial, heated discussion relating to the lack of Congressional control over the FTC:

> Mr. Russo: Mr. Speaker, I am very disturbed at what goes on at Federal agencies during rulemaking proceedings—in this case the Federal Trade Commission. We need more and stronger oversight and we need it now.... [The FTC] ignore[s] Congressional intent in implementing the laws we pass.

> .   .   .   .   .

> Mr. Quayle: I would just like to say that the issue is, who is going to be making the laws in this country? ... Do [the people in your districts] think it should be the elected public officials that have to stand for election, ... or do they think it should be the unelected bureaucrat who has more power and responsibility in administering and making the laws in this country than does the Congress?

> .   .   .   .   .

> Mr. Moore: There is no check on the power of the FTC.

> .   .   .   .   .

> Mr. Levitas: The Federal Trade Commission has the power to adopt rules and regulations which have the force of law, even though they have never been elected by anybody. The proposal before us in the conference report is a provision which says that the Congress, if it wants to reject regulations by unelected bureaucrats, we have got to enact a statute, passed by both Houses and signed by the President. That is absurd.

*Id.* at 32329–30. There is no way that the position of the FTC can somehow be said to also be that of the Congress in light of the above.

Any contention that the intent of the FTC alone (without Congress) is sufficient for a federal court to imply a cause of action must also fail. While it is true that the Supreme Court has recognized implied rights of action under Rule 10b–5 of the Securities Exchange Commission, such was done concomitantly with implying a right of action under § 10(b) of the Securities Exchange Act of 1934. *Ernst & Ernst v.*

*Hochfelder,* 425 U.S. 185, 214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976). The court has explicitly rejected arguments that the rules adopted under a statute can themselves provide the source of an implied damages remedy if the statute itself cannot. *Id.* at 214, 96 S.Ct. at 1391; *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 577 n. 18, 99 S.Ct. 2479, 2489 n. 18, 61 L.Ed.2d 82 (1979). Thus, there can be no claim that the FTC's new rules themselves provide the source of the implied right of action.

Finally, I come to the only remaining possibility: that Congress has, either directly or by implication, adopted the FTC's position. This possibility must also be rejected.

There is absolutely no indication that Congress has directly adopted the FTC's view regarding the franchise disclosure rules. Had the FTC rules become effective after the effective date of the Federal Trade Commission Improvements Act of 1980, the adoption by implication argument would raise interesting questions. However, at the time the rules went into effect there was no possible argument that Congress could have adopted or ratified the FTC's position on implied rights of action.[3] If the FTC regulations had been adopted after the passage of the Federal Trade Commission Improvements Act of 1980, Pub.L. No. 96–252, 94 Stat. 374 (1980), such an argument would require thorough consideration, because those amendments in-cluded a right of legislative veto by both houses concurring. *See* 15 U.S.C. § 57a–1(b). By virtue of the 1980 amendments the Congress, by concurrent resolution, could disapprove a final rule of the FTC.[4] Such veto power would at least raise the possibility that any final rule not rejected was accepted by the Congress as well as the FTC's interpretation of the rule. Because the franchise rules were in effect prior to the 1980 legislative veto amendments, such an argument cannot prevail. Congress' intent has not been shown to have changed in any way as a result of the FTC's 1979 franchise disclosure rules. I am therefore bound to follow those holdings that have consistently rejected an implied private right of action under the FTCA.[5]

As Justice Rehnquist noted in the concurring opinion in *Cannon v. University of Chicago,* 441 U.S. 677, 718, 99 S.Ct. 1946, 1968, 60 L.Ed.2d 560 (1978): "the factors to which I have briefly adverted apprise the lawmaking branch of the Federal Government that the ball, so to speak, may well now be in its court." Congress may, if it wishes, give effect to the apparent desire of the FTC that private rights of action be afforded litigants under 16 C.F.R. §§ 436.-1–438.10. The FTC may express, as it has, its opinion that private rights of action should be provided, but the Commission's opinion cannot supplement or supply the requisite Congressional intent.

---

**3.** As Mr. Levitas' statements reveal on p. 661, *supra,* in 1979 if Congress disapproved of an FTC rule the rule could only be stricken by passing a bill through both Houses and obtaining the President's signature.

**4.** The concurrent veto power is basically the same proposal rejected by the House in the joint conference report to H.R. 3816. See p. 661, *supra.*

**5.** Plaintiff, in response to the defendants' motion, has taken the position that even if there is no jurisdiction pursuant to 28 U.S.C. § 1331 there is jurisdiction pursuant to 28 U.S.C. § 1332 and/or 28 U.S.C. § 1337. Because plaintiff's claim under the FTCA was not frivolous, I have determined there is subject matter jurisdiction over the complaint but have determined it must be dismissed for failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)6. Because plaintiff's only claims related to the federal regulations and statute, his jurisdictional arguments are moot. There are no longer any claims for this court to consider. Further, the ruling that there is jurisdiction under section 1331 but no cause of action stated moots the jurisdiction claim under section 1337 because section 1337 does not create an independent cause of action. *See B.F. Goodrich Co. v. Northwest Industries, Inc.,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). Finally, any contention that plaintiff may have state claims which can be addressed by this court by virtue of diversity jurisdiction also fails. On its face plaintiff's complaint contains non-diverse parties.