**Robert LAYTON, et al.**

v.

**AAMCO TRANSMISSIONS, INC.**

**Civ. No. JFM–89–371.**

United States District Court,
D. Maryland.

July 25, 1989.

A.J. Hohman, Jr., Hope, Hohman & Georges, San Antonio, Tex., and Mitchell Stevan, Weinstock, Stevan & Harris, Baltimore, Md., for plaintiffs.

David B. Isbill, Covington & Burling, Washington, D.C., for defendant.

## MEMORANDUM

MOTZ, District Judge.

This action arises out of a dispute concerning an AAMCO franchise. Plaintiffs are the franchisees, Robert and Sue Layton and Ste–Mar Inc., a corporation owned by the Laytons; the defendants are AAMCO Transmissions, Inc. and Robert Morgan and Abraham Bernstein, who were during the times relevant to this suit directors and, respectively, the chairman and president of AAMCO. Plaintiffs assert claims for common law fraud, violation of the Maryland Consumer Protection Act, breach of fiduciary duty, breach of an implied contractual duty of good faith and violation of the Maryland Franchise Act. Defendants have moved for dismissal of some of the claims and for summary judgment as to others.

## FACTS

In July 1985, Robert Layton wrote to AAMCO expressing his interest in becoming an AAMCO franchisee. In October 1985 he met with an AAMCO account executive and was provided with information about AAMCO franchises. He was also given disclosure documents required under the Maryland Franchise Act and the rules of the Federal Trade Commission. On December 2, 1985 he submitted a franchise application, and on December 16, 1985, in accordance with AAMCO's established procedure, a board (composed of various AAMCO officials) held a hearing to determine if his application should be approved. Layton attended the hearing, and the proceedings were transcribed. On December 18th he was notified that his application had been approved.

The Laytons decided that Sue Layton should be made a co-franchisee, and (after

she had been given the required disclosure documents) she submitted an application in her name. A second formal board of review hearing was held, and her application was approved.

The Laytons' original intention was to open a new AAMCO facility in the Baltimore area, and in April 1986 AAMCO approved a specific site which they proposed. The Laytons subsequently changed their plans and decided to purchase an existing AAMCO facility from one Sidney Cooper. On November 17, 1986, a third board of review hearing was held on the Laytons' application for a franchise at that site and after their application was approved, the Laytons closed their purchase agreement with Cooper. On December 30, 1986, they began operations. On January 9, 1987, Ste–Mar, Inc. was added as a franchisee.

In October 1986, while the Laytons' applications were pending, developments began to occur on another front which provide the basis for the Laytons' claims in this case. On October 4, 1986, the Attorney General of Missouri wrote to AAMCO concerning customer complaints which he and other Attorneys General had received about AAMCO franchisees. During the next several months AAMCO became involved in negotiations with the Attorneys General of fourteen states (not including Maryland) concerning the resolution of these customer complaints. At AAMCO's request the negotiations were kept secret.

In February 1987 AAMCO and the Attorneys General agreed to enter into consent judgments which, *inter alia,* placed the burden upon AAMCO to enforce its policies and procedures and to assure that its franchisees complied with all applicable law. The consent judgments also required AAMCO to modify a practice which theretofore had frequently been followed by its franchisees: disassembling a transmission for diagnostic purposes before giving a firm price quotation to the customer and requiring the customer to pay the disassembly and reassembly costs in the event that he chose not to have the repair service performed by AAMCO. Under the modified procedure (currently in effect) an AAMCO franchisee is required to provide full disclosure to the customer concerning potential costs before disassembling a transmission. When it decided to enter into the consent judgments in February, 1987, AAMCO also decided to require all of its franchisees, wherever located, to follow the modified procedure.

The gravamen of plaintiffs' claims here is that AAMCO, Robert Morgan and Abraham Bernstein unlawfully concealed from them, while their franchise applications were pending, the facts that customer complaints had been filed against AAMCO and that AAMCO was negotiating the resolution of the complaints with the Attorneys General of various states. Plaintiffs also complain of the imposition upon them of the procedural modification borrowed from the consent judgments.

## I.

Defendants Morgan and Bernstein move to dismiss for lack of personal jurisdiction. The motion is well-founded.

■ The only contacts which plaintiffs allege Morgan and Bernstein personally had with Maryland are a letter sent by Morgan to Robert Layton in Maryland welcoming him as an AAMCO franchisee and a form letter sent by Morgan and Bernstein to the Laytons in Maryland updating them on the consent judgments and procedural modification. Plaintiffs contend that the sending of these letters is sufficient to sustain the exercise of jurisdiction under Section 6–103(b)(1) and 6–103(b)(3) of the Maryland Long Arm Statute. *See* Md.Cts. & Jud.Proc.Code Ann., Section 6–103. However, both of those sections require the performance of acts within the state. Thus, the express statutory language does not permit application of the so-called "effects" test which plaintiffs urge. *See generally Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

■ Plaintiffs' reliance upon the "conspiracy" theory of jurisdiction also fails. Plaintiffs acknowledge that corporate officers cannot conspire with their own corporation, *see Marmott v. Maryland Lumber*

*Co.,* 807 F.2d 1180, 1184 (4th Cir.1986), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 700 (1987), and AAMCO Transmissions, Inc. is the only defendant alleged to have performed acts within Maryland.

## II.

Three counts of the Complaint are subject to dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

■ 1. Plaintiffs are not "consumers" and therefore have no cause of action under the Maryland Consumer Protection Act. *See* Maryland Code Ann., Section 13–101(c)(1); *Boatel Industries v. Hester,* 77 Md.App. 284, 550 A.2d 389, 397–399 (1988); *compare State v. Cottman Transmission Systems, Inc.,* 75 Md.App. 647, 542 A.2d 859 (1988).

■ 2. A franchisor/franchisee relationship is not fiduciary or confidential in nature, and plaintiffs therefore have stated no claim for breach of a duty arising from such a relationship. *See, e.g., O'Neal v. Burger Chef Systems, Inc.,* 860 F.2d 1341, 1349 n. 4 (6th Cir.1988); *Premier Wine & Spirits v. E. & J. Gallo Winery,* 846 F.2d 537, 540–41 (9th Cir.1988); *Picture Lake Campground v. Holiday Inns, Inc.,* 497 F.Supp. 858, 869 (E.D. Va.1980).

■ 3. Plaintiffs have no claim under the Federal Trade Commission's franchise disclosure rules since those rules do not give rise to a private cause of action. *See, e.g., Days Inn of America Franchising, Inc. v. Windham,* 699 F.Supp. 1581 (N.D. Ga.1988); *Freedman v. Meldy's, Inc.,* 587 F.Supp. 658 (E.D.Pa.1984).

## III.

AAMCO is entitled to summary judgment as to plaintiffs' three remaining claims.

*Fraud Claim*

■ Plaintiffs contend that AAMCO made misrepresentations to them concerning (1) AAMCO's good reputation in the industry, (2) its excellence in the trans-

mission field, (3) its valuable good will and (4) plaintiffs' probabilities of success as owners of an AAMCO franchise. Such representations were not "susceptible of exact knowledge at the time [they were] made" and thus, as a matter of law, cannot constitute actionable fraud. *See Vaughn v. General Foods Corp.,* 797 F.2d 1403, 1411 (7th Cir.1986). Furthermore, the record establishes that plaintiffs cannot prove that they relied upon any such misrepresentations. The franchise agreement contained an integration clause in which the Laytons acknowledged that they had no relief upon any representations made in the agreement. Although this fact alone would not bar a claim for fraud, *see e.g., Call Carl, Inc. v. BP Oil Corp.,* 554 F.2d 623, 630 (4th Cir.1977), at each of AAMCO's board of review hearings the Laytons stated that they had relied upon no representations not mentioned during the hearing. Since none of the representations upon which they presently base their claims were made during any of the hearings, it is apparent that as an evidentiary matter the Laytons cannot meet their burden of proving reliance by clear and convincing evidence. *See, e.g., Finch v. Hughes Aircraft Co.,* 57 Md.App. 190, 469 A.2d 867, 887 (1984), *cert. denied* 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985).

Plaintiffs appear to acknowledge that they cannot prevail under a theory of affirmative misrepresentation. Thus, they contend that the alleged misrepresentations to which they allude established a context in which AAMCO's failure to disclose its negotiations with the fourteen Attorneys General constituted the fraud. The fallacy in this contention is that there was no relationship of trust between the parties that created any duty on the part of AAMCO to make any disclosures. *See, e.g., Martin v. Pepsi-Cola Bottling Company,* 639 F.Supp. 931, 935 (D.Md.1986); *Equitable Trust Co. v. G & M Const. Corp.,* 544 F.Supp. 736, 743–44 (D.Md. 1982).[1]

---

**1.** Plaintiffs dispute that a relationship of trust is     necessary to give rise to a duty to speak. Rath-

The uncontradicted record establishes another flaw in plaintiffs' fraud claim. Although plaintiffs contend that their net profits have been less than they anticipated, it is undisputed that plaintiffs' gross revenues have exceeded their own estimates and the performance of Sidney Cooper at the facility which they purchased from him. Since adverse impact of unfavorable publicity resulting from the entry of the consent judgments would be reflected at the level of gross income, there is a critical gap in plaintiffs' proof. Moreover, assuming that reduced net profits does provide the proper measure of loss, plaintiffs could not recover such profits here since they would, in effect, be seeking to obtain the benefit of their bargain. The integration clause in the franchise agreement prevents them from doing so. *See, e.g., Call Carl, Inc. v. BP Oil Corp., supra; Kardios Systems, Corp. v. Perkin–Elmer Corp.*, 645 F.Supp. 506, 511 (D.Md. 1986).

*Claim Under the Maryland Franchise Act*

■ The Maryland Franchise Act subjects to civil liability a franchisor who fails to disclose a material fact to a prospective franchisee. *See* Md.Code Ann., Art. 56, Section 365. Thus, in connection with their statutory claims, plaintiffs may rely upon AAMCO's nondisclosure of its negotiations with the fourteen Attorneys General. However, liability under the Franchise Act still requires proof of damage, and the fact that plaintiffs' gross revenues exceeded their own estimates and the gross revenues of their predecessor is as fatal to their statutory claim as it is to their common law fraud claim.

Although the Franchise Act provides that a court may order the rescission of any franchise which was entered into in violation of the Act, *see* Md.Code Ann., Art. 56, Section 365(b), it does not appear that plaintiffs seek rescission here.[2] In any event, plaintiffs have not pled or otherwise suggested any facts which would lead this Court to believe that rescission should be ordered. This is not a case in which AAMCO's non-disclosure was morally reprehensible or in clear violation of public policy. There were sound business reasons for AAMCO to keep its negotiations with the Attorneys General secret, and it would be unreasonable to hold AAMCO strictly liable for a non-disclosure of those negotiations throughout the statutory limitations period.

If plaintiffs had sought rescission immediately in February 1987 when the entry of the consent orders was publicly announced, their claim that they had been materially misled would have been much more compelling and the statutory purpose of the Franchise Act of requiring full disclosure in the sale of franchises could have been more easily reconciled with commercial reality. By waiting for two years before filing suit, plaintiffs have given themselves an opportunity to determine if the profitability of their franchise is acceptable to them and have been responsible for the evolution of circumstances which make impossible the recreation of the conditions which existed in February 1987. In effect, were they seeking rescission, they would be playing a game of "heads, we win, tails, you lose." Moreover, to the extent that plaintiffs complain that the profitability of their franchise has been diminished by AAMCO's modification of a practice of its franchisees which was at best of dubious propriety, they come into this Court with unclean hands.

*Claim for Breach of Duty of Good Faith*

■ Plaintiffs' final claim for breach of an implied contractual duty of good faith

---

er, they contend that whether such a duty exists is to be determined by reference to five factors: (1) the relationship between the plaintiff and the defendant, (2) the parties' relative access to the information to be disclosed, (3) the benefit derived by the defendant from the purchase or sale, (4) defendant's awareness of plaintiff's reliance on defendant in making his investment decisions and (5) defendant's role in initiating the purchaser sale. *See City of Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463 (M.D.Pa.

1985). Even assuming this test to be applicable, only the second factor clearly weighs in favor of plaintiffs.

2. Plaintiffs do include a general prayer for "other and further relief, at law or in equity" at the close of the Complaint. However, they do not mention rescission specifically and the prayer for relief relating to the Franchise Act claim demands only monetary damages.

likewise fails. Since AAMCO's alleged misrepresentations and nondisclosures all predated the franchise agreement, this claim rests solely upon AAMCO's decision made in February 1987 to modify a term in the franchise agreement requiring plaintiffs to provide fuller disclosures to consumers regarding the potential costs of repair. It is undisputed that AAMCO had the right under its agreement with plaintiffs to change the terms of the franchise unilaterally, and there are no facts in the record to suggest that AAMCO wrongfully discriminated against plaintiffs in requiring the modification here in question. To the contrary, that modification had been required by the fourteen consent orders into which AAMCO entered, and AAMCO reached the conclusion that it was advisable to extend the benefit of the modification to the consumers in all jurisdictions. That decision was entirely reasonable on its face.

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is, this 25th day of July 1989

ORDERED

1. The motion of defendants Morgan and Bernstein to dismiss this action for lack of personal jurisdiction is granted;

2. Defendant AAMCO's motion to dismiss plaintiffs' claims for violation of the Maryland Consumer Protection Act, breach of fiduciary duty and violation of the rules of the Federal Trade Commission is granted; and

3. Defendant AAMCO's motion for summary judgment is granted as to plaintiffs' claims for fraud, violation of the Maryland Franchise Act and breach of a contractual duty of good faith.